AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  ☒ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

*FILED FEB 18 2022 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA*

## OFFENSE CHARGED

COUNT 1: 18 U.S.C. § 371–Consp. To Offer, Pay, Solicit and Receive Remun. for the Referral of Medicare Beneficiary; COUNTS 2-10: 42 U.S.C. § 1320a-7b(b)(2)(A)– Payment of Remun. for Referral of a Medicare Patient; 18 U.S.C. § 2– Aiding and Abetting; COUNTS 11-19: 42 U.S.C. § 1320a-7b (b)(1)(A)–Solicitation and Receipt of Remun. for Referral of a Medicare Patient: 18 U.S.C. § 2—Aiding and Abetting ✚

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

**PENALTY:**
Count 1: Imprisonment 5 yrs, Fine $250,000, Supervised Release 3 yrs, Special Assessment $100
Counts 2-10 & 11-19: Imprisonment 5 yrs, Fine $25,000, Supervised Release 3 yrs, Special Assessment $100

### DEFENDANT - U.S
JAIME CORTES, ABDELSALAM MOGASBE and JAMES NICKOLOPOULOS ✚

**DISTRICT COURT NUMBER**
CR 18-00373 JST

## PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)
FBI SA Michael Tomeno

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   Stephanie M. Hinds
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Michael Pitman

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding
1) ☐ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☒ Is on Bail or Release from (show District)
NDCA

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed

**DATE OF ARREST** ▶ Month/Day/Year
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT   Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:     Before Judge:

Comments:

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

FILED
FEB 18 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*SAN JOSE DIVISION*

## THE UNITED STATES OF AMERICA

vs

## JAIME CORTES, ABDELSALAM MOGASBE, and JAMES NICKOLOPOULOS

CR-18-373-JST

## SUPERSEDING INDICTMENT

| | |
|---|---|
| COUNT 1: | 18 U.S.C. § 371 – Conspiracy To Offer, Pay, Solicit and Receive Remuneration for the Referral of Medicare Beneficiary |
| COUNTS 2-10: | 42 U.S.C. § 1320a-7b(b)(2)(A) – Payment of Remuneration for Referral of a Medicare Patient; 18 U.S.C. § 2—Aiding and Abetting |
| COUNTS 11-19: | 42 U.S.C. § 1320a-7b(b)(1)(A) – Solicitation and Receipt of Remuneration for Referral of a Medicare Patient; 18 U.S.C. § 2—Aiding and Abetting |

*A true bill.*

_____
Foreperson

Filed in open court this __17__ day of __February__ A.D. 202_2_

_____
United States Magistrate Judge

Bail. $ ___No process___

1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2

FILED
FEB 18 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. 5:18-cr-00373-JST |
|---|---|
| Plaintiff, | ) |
| | ) VIOLATIONS: |
| v. | ) 18 U.S.C. § 371 - Conspiracy To Pay and Receive |
| | ) Illegal Remunerations for Health Care Referrals; |
| | ) 42 U.S.C. §§ 1320a-7b(b)(1)(A), (b)(2)(A) - Illegal |
| JAIME CORTES, | ) Remunerations for Health Care Referrals; |
| ABDELSALAM MOGASBE, and | ) 18 U.S.C. § 2 - Aiding and Abetting; |
| JAMES NICKOLOPOULOS, | ) 18 U.S.C. §§ 982(a)(7) and (b)(1), 981(a)(1)(C), |
| | ) 28 U.S.C. § 2461(c) - Criminal Forfeiture |
| Defendants. | ) |
| | ) SAN JOSE VENUE |
| | ) |

### FIRST SUPERSEDING INDICTMENT

The Grand Jury charges:

**Introductory Allegations**

At all times relevant to this Indictment, unless otherwise indicated:

1.  Home health care agencies commonly provide skilled nursing services at a patient's residence in accordance with a plan of treatment typically prescribed by a physician.

2.  Medics Choice Home Health Care, Inc. ("Medics Choice") was a home health care agency located in Milpitas, California, within the Northern District of California. It provided services to patients of the federal Medicare program, and submitted claims for reimbursement to the Medicare program.

FIRST SUPERSEDING INDICTMENT            1

3. FELINA ROQUE was the owner and Chief Executive Officer of Medics Choice. ROQUE was also the owner and operator of other home health care agencies in California.

4. Defendant JAIME CORTES was a physician who owned and operated a medical practice located in Oakland, California, within the Northern District of California.

5. Defendant ABDELSALAM MOGASBE was a physician who owned and operated a medical practice located in San Jose, California, within the Northern District of California.

6. Defendant JAMES NICKOLOPOULOS was a physician who owned and operated a medical practice located in San Francisco, California, within the Northern District of California.

7. LORENA GERASIMOV was an employee of Medics Choice, holding the position of marketer and reporting directly to ROQUE. As a marketer, GERASIMOV commonly obtained Medicare beneficiaries as patients for Medics Choice from referring physicians, including defendants CORTES, MOGASBE, and NICKOLOPOULOS, and other individuals associated with medical providers that could refer Medicare beneficiaries.

8. LORETA DARIO a/k/a LORETA FLORES (hereinafter, "DARIO") was an employee of Medics Choice, holding the position of marketer and reporting directly to ROQUE. As a marketer, DARIO commonly obtained Medicare beneficiaries as patients for Medics Choice from referring physicians, including defendants CORTES and MOGASBE, and other individuals associated with medical providers that could refer Medicare beneficiaries.

9. A person known to the Grand Jury as Employee 1 worked as a payroll processor and in human resources at Medics Choice.

10. A person known to the Grand Jury as Employee 2 worked as an assistant at Medics Choice responsible for medical records and non-clinical case management.

11. ROQUE had and controlled accounts, including accounts at JP Morgan Chase Bank ("JP Morgan Chase") with account numbers ending xx8572, xx8263, and xx9870.

12. GERASIMOV had and controlled accounts, including an account at Wells Fargo Bank with an account number ending xx0957.

### The Medicare Program

13. Medicare was a federal health care benefit program, affecting interstate commerce, that

provided benefits to individuals who were 65 years and older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "Federal health care program" as referenced in Title 42, United States Code, Section 1320a-7b(b), and a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

      14. Medicare had various programs that covered different types of benefits. The different programs were separated into parts. Covered benefits under Part A of Medicare included, among other things, medically necessary home health care services. Covered benefits under Part B of Medicare included, among other things, the certification of an individual for home health care services.

      15. CMS contracted with private insurance companies to enroll, process, and pay Medicare claims. Noridian processed and paid Part B Medicare home health care services claims for CMS in Northern California during the relevant time period, and National Government Services processed and paid Part A Medicare home health care services claims for CMS in Northern California during the relevant time period.

      16. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each Medicare beneficiary was given a unique health insurance claim number.

      17. Health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers." To participate in Medicare, providers, including home health agencies ("HHAs"), were required to submit applications in which the providers agreed to comply with all Medicare-related laws and regulations, including the anti-kickback statute (42 U.S.C. § 1320a-7b(b)), which proscribes the offering, payment, solicitation, or receipt of any remuneration in exchange for a patient referral or referral of other business for which payment may be made by any federal health care program. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims.

      18. A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

      19. Most providers submitted their claims electronically pursuant to an agreement they executed with Medicare in which the providers agreed that: (a) they were responsible for all claims

FIRST SUPERSEDING INDICTMENT        3

submitted to Medicare by themselves, their employees, and their agents; (b) they would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization to do so; and (c) they would submit claims that were accurate, complete, and truthful.

**Home Health Care Services**

20. HHAs who provided services to Medicare beneficiaries, including Medics Choice, could submit claims for reimbursement to the Medicare program. Medicare would cover home health care services only if, among other requirements, the Medicare beneficiary was homebound; the Medicare beneficiary needed skilled nursing services on an intermittent basis, or physical, speech pathology, or occupational therapy services; the Medicare beneficiary was under the care of a qualified physician; and a Plan of Care (CMS Form 485) was established by a physician.

21. A Medicare claim for payment was required to set forth, among other things, the following: the Medicare beneficiary's name and unique Medicare identification number; the type of services provided to the Medicare beneficiary; the date that the services were provided; and the name and Medicare provider number of the attending physician who established the plan of care.

COUNT ONE:   (18 U.S.C. § 371 – Conspiracy To Offer, Pay, Solicit, and Receive Remuneration for the Referral of Medicare Beneficiary)

22. The allegations contained in paragraphs 1 through 21 are re-alleged and incorporated as if fully set forth here.

23. Beginning no later than in or around April 2013, and continuing through at least in or around May 2017, in Santa Clara County, within the Northern District of California, and elsewhere, the defendants,

JAIME CORTES,
ABDELSALAM MOGASBE, and
JAMES NICKOLOPOULOS,

and ROQUE, DARIO, GERASIMOV, Employee 1, Employee 2, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

    a. Knowingly and willfully soliciting and receiving remuneration in return for, and

to induce, the referral of an individual for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A); and

  b. Knowing and willfully offering to pay and paying any remuneration in return for, and to induce, the referral of an individual for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

### The Manner and Means of the Conspiracy

24. The manner and means by which the objectives of the conspiracy were carried out, included, among others, the following:

  a. ROQUE, DARIO, GERASIMOV, and other individuals affiliated with Medics Choice developed relationships with individuals who could refer Medicare beneficiaries to Medics Choice, including defendants CORTES, MOGASBE, and NICKOLOPOULOS, all of whom are physicians;

  b. ROQUE, DARIO, GERASIMOV, and other individuals affiliated with Medics Choice, informed individuals who could refer Medicare beneficiaries to Medics Choice, including defendants CORTES, MOGASBE, and NICKOLOPOULOS, that Medics Choice would pay remuneration, also known as kickbacks, in exchange for referrals of Medicare beneficiaries to Medics Choice;

  c. Defendants CORTES, MOGASBE, and NICKOLOPOULOS, referred or caused to be referred Medicare beneficiaries to Medics Choice knowing that Medics Choice would pay kickbacks to Defendants CORTES, MOGASBE, and NICKOLOPOULOS, or to others on their behalf, in exchange for, and to induce future, referrals, and Medics Choice did, in fact make such payments;

  d. Medics Choice would then bill Medicare for home health care services purportedly provided by individuals affiliated with Medics Choice to the Medicare beneficiaries;

  e. In some instances, individuals affiliated with Medics Choice, including GERASIMOV and DARIO, would identify facilities with Medicare beneficiaries and accompany physicians to the facilities to see Medicare beneficiaries, which the physicians would then refer to

Medics Choice for home health services. In other instances, physicians would refer Medicare beneficiaries to Medics Choice for home health services without the involvement of Medics Choice personnel;

  f. In order to pay kickbacks for some referrals made by defendants CORTES, MOGASBE, NICKOLOPOULOS, and others, ROQUE used, or caused to be used, checks made payable to individuals who could refer Medicare beneficiaries to Medics Choice;

  g. In order to pay kickbacks for some referrals made by defendants CORTES, MOGASBE, NICKOLOPOULOS, and others, ROQUE used, or caused to be used, checks made payable to individuals affiliated with Medics Choice, including GERASIMOV and DARIO, who had developed relationships with individuals who could refer Medicare beneficiaries to Medics Choice;

  h. In order to pay kickbacks for some referrals made by defendants CORTES, MOGASBE, NICKOLOPOULOS, and others, ROQUE withdrew, or caused to be withdrawn, cash from bank accounts, and paid, or caused to be paid, that cash to individuals affiliated with Medics Choice, including GERASIMOV and DARIO, who had developed relationships with individuals who could refer Medicare beneficiaries to Medics Choice;

  i. In some instances, individuals affiliated with Medics Choice, including GERASIMOV and DARIO, would pay, or cause to be paid, to the referring physicians and individuals, including defendants CORTES, MOGASBE, and NICKOLOPOULOS, all or a portion of the kickback payments received from, or at the direction of, ROQUE;

  j. In some instances, kickbacks were paid as a flat monthly rate of approximately $2,000 to $3,500 for all referrals made in that month. In other instances, kickbacks were paid for each Medicare beneficiary referred to Medics Choice at the rate of approximately $250 to $750 per referral;

  k. In some instances, individuals affiliated with Medics Choice, including GERASIMOV and DARIO, would provide, or cause to be provided, things of value, including electronics, meals, or entertainment, to the referring physicians and individuals, including defendants CORTES, MOGASBE, and NICKOLOPOULOS, in order to strengthen the relationship between Medics Choice and the referring physicians and individuals, and to induce future referrals of Medicare beneficiaries to Medics Choice;

l.      In some instances, individuals affiliated with Medics Choice, including GERASIMOV, communicated with physicians, including defendant NICKOLOPOULOS, using encrypted communications; and

m.      To keep track of the kickback payments that Medics Choice made and owed to defendants CORTES, MOGASBE, and NICKOLOPOULOS, and others, ROQUE and employees working at ROQUE's direction, including Employee 1, would maintain spreadsheets. The spreadsheets commonly listed each Medicare beneficiary referred to Medics Choice and the amount owed to the referring physician or individual as a result of the referral.

25.     From in or around February 2014 to in or around September 2017, Medics Choice submitted claims to Medicare for home health care services purportedly provided by Medics Choice to Medicare beneficiaries, including claims for beneficiaries referred by defendants CORTES, MOGASBE, and NICKOLOPOULOS. On the basis of those claims associated with beneficiaries referred by CORTES, MOGASBE, and NICKOLOPOULOS, Medicare paid Medics Choice a total amount of approximately $4,200,000 for home health care services.

### Overt acts

26.     In furtherance of the conspiracy and to accomplish its objects, defendants CORTES, MOGASBE, and NICKOLOPOULOS, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, within the Northern District of California and elsewhere:

a.      On or about November 17, 2014, defendant NICKOLOPOULOS referred Medicare beneficiaries to Medics Choice, including beneficiaries such as D.S. (aka D.J.), C.O., and J.P.

b.      On or about December 30, 2014, defendant NICKOLOPOULOS and individuals affiliated with Medics Choice visited facilities within the Northern District of California housing Medicare beneficiaries for the purpose of identifying and referring Medicare beneficiaries to Medics Choice.

c.      On or about February 20, 2015, defendant NICKOLOPOULOS and individuals affiliated with Medics Choice visited facilities housing Medicare beneficiaries for the purpose of referring Medicare beneficiaries to Medics Choice.

      d.     On or about April 11, 2015, defendant NICKOLOPOULOS and individuals affiliated with Medics Choice visited facilities housing Medicare beneficiaries for the purpose of referring Medicare beneficiaries to Medics Choice.

      e.     On or about April 11, 2015, defendant NICKOLOPOULOS referred Medicare beneficiaries to Medics Choice, including beneficiaries such as P.D., W.C., M.T., N.T., B.M., C.C., and E.M.

      f.     On or about May 4, 2015, defendant NICKOLOPOULOS and individuals affiliated with Medics Choice visited facilities housing Medicare beneficiaries for the purpose of referring Medicare beneficiaries to Medics Choice.

      g.     On or about May 9, 2015, defendant NICKOLOPOULOS and individuals affiliated with Medics Choice visited facilities housing Medicare beneficiaries for the purpose of referring Medicare beneficiaries to Medics Choice.

      h.     In or about May 2015, defendant NICKOLOPOULOS referred Medicare beneficiaries to Medics Choice, including beneficiaries such as M.J., K.R., C.S., E.H., M.C., T.M., E.H., M.M., J.F., E.M., G.M., J.R., and J.C.

      i.     On or about June 1, 2015, ROQUE wrote a $2,000 check payable to defendant MOGASBE which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice;

      j.     On or about June 8, 2015, defendant MOGASBE deposited a $2,000 check into an account at Citibank, which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      k.     On or about June 20, 2015, defendant NICKOLOPOULOS and individuals affiliated with Medics Choice visited facilities housing Medicare beneficiaries for the purpose of referring Medicare beneficiaries to Medics Choice.

      l.     On or about June 20, 2015, defendant NICKOLOPOULOS referred Medicare beneficiaries to Medics Choice, including beneficiaries such as P.D., W.C., M.T., N.T., B.M., C.C., and E.M.

      m.     In or about June 2015, defendant MOGASBE referred approximately thirty-one

Medicare beneficiaries to Medics Choice.

      n.    On or about August 25, 2015, defendant CORTES referred Medicare beneficiary M.C. to Medics Choice.

      o.    In or about August 2015, defendant MOGASBE referred Medicare beneficiaries to Medics Choice, including beneficiaries such as L.M., L.A., A.M., and J.C.

      p.    On or about September 28, 2015, defendant MOGASBE caused to be deposited $2,000 in cash into an account at Citibank, which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      q.    In or about September 2015, defendant MOGASBE referred Medicare beneficiaries to Medics Choice, including beneficiaries such as V.M., S.L., L.M., L.J., and A.S.

      r.    On or about October 1, 2015, defendant MOGASBE referred Medicare beneficiaries to Medics Choice, including beneficiaries such as C.B. and A.M.

      s.    On or about October 1, 2015, defendant MOGASBE caused to be deposited $2,100 in cash into an account at Citibank, which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      t.    On or about October 31, 2015, defendant MOGASBE caused to be deposited $1,900 in cash into an account at Citibank, which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      u.    In or about October 2015, defendant CORTES referred Medicare beneficiaries to Medics Choice, including beneficiaries such as M.H., O.V., and C.M.

      v.    On or about January 8, 2016, defendant CORTES referred Medicare beneficiaries to Medics Choice, including beneficiaries such as A.L. and B.L.

      w.    In or about January 2016, defendant CORTES referred approximately thirty-four Medicare beneficiaries to Medics Choice.

      x.    On or about February 2, 2016, CORTES caused to be deposited $18,650 in cash into two accounts at Wells Fargo Bank, which represented kickbacks that defendant CORTES received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      y.    On or about September 19, 2016, defendant MOGASBE referred Medicare

FIRST SUPERSEDING INDICTMENT           9

beneficiaries to Medics Choice, including beneficiaries such as E.P., G.M., G.H., and J.K.

      z.    On or about September 19, 2016, GERASIMOV wrote a $3,000 check payable to defendant MOGASBE which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      aa.    On or about October 14, 2016, defendant CORTES referred Medicare beneficiaries to Medics Choice, including beneficiaries such as J.A., G.O., R.A., and M.L.

      bb.    In or about November 2016 and December 2016, defendant MOGASBE referred Medicare beneficiaries to Medics Choice, such as J.P., T.P., D.D., K.H., and T.T.

      cc.    On or about December 7, 2016, GERASIMOV wrote a $1,500 check payable to defendant MOGASBE which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      dd.    On or about December 9, 2016, defendant MOGASBE deposited a $1,500 check into an account at Citibank, which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      ee.    On or about December 22, 2016, CORTES caused to be deposited $5,001 in cash into an account at Wells Fargo Bank, some of which represented kickbacks that defendant CORTES received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      ff.    On or about January 3, 2017, defendant MOGASBE attempted to deposit a $3,000 check dated September 19, 2016 into an account at Citibank, which represented kickbacks that defendant MOGASBE received in exchange for, and to induce, referrals of Medicare beneficiaries to Medics Choice.

      gg.    On or about the following dates, ROQUE withdrew cash from her accounts at JP Morgan Chase ending xx9870, xx8572 and xx8263, and Wells Fargo Bank accounts ending xx7478 and xx3924 for the purpose of paying kickbacks to referring physicians and individuals including defendants CORTES, MOGASBE, and NICKOLOPOULOS, in exchange for referring Medicare beneficiaries to Medics Choice, and caused such kickbacks to be paid:

| DATE | TOTAL AMOUNT WITHDRAWN | DEFENDANT | AMOUNT PAID | ACCOUNT DRAWN ON |
|---|---|---|---|---|
| 11/21/2014 | $6,000 | NICKOLOPOULOS | $1,050 | JMPC xx9870 |
| 4/17/2015 | $6,000 | NICKOLOPOULOS | $2,400 | JPMC xx8572 |
| 5/8/2015 | $6,000 | NICKOLOPOULOS | $4,500 | JPMC xx8572 |
| 5/15/2015 | $6,500 | NICKOLOPOULOS | $2,700 | JPMC xx8572 |
| 5/21/2015 | $4,000 | NICKOLOPOULOS | $1,800 | JPMC xx8572 |
| 6/26/2015 | $5,800 | NICKOLOPOULOS | $2,700 | JPMC xx8572 |
| 9/3/2015 | $6,000 | MOGASBE | $2,000 | JMPC xx8263 |
| 10/1/2015 | $15,000 | MOGASBE | $2,500 | JMPC xx8263 |
| 10/30/2015 | $8,500 | MOGASBE | $2,500 | JMPC xx8263 |
| 11/17/2016 | $15,000 | MOGASBE | $3,000 | JMPC xx8263 |
| 8/27/2015 | $5,800 | CORTES | $700 | JPMC xx8572 |
| 11/6/2015 | $8,500 | CORTES | $2,800 | JMPC xx8263 |
| 1/8/2016 | $9,500 | CORTES | $2,800 | JMPC xx8263 |
| 1/14/2016 | $35,000 | CORTES | $28,000 | JPMC xx8572 |
| 1/21/2016 | $15,000 | CORTES | $5,500 | JMPC xx8263 |
| 12/16/2016 | $23,500 | CORTES | $4,200 | WFB xx3924, WFB xx7478 |

All in violation of 18 U.S.C. § 371.

COUNTS TWO THROUGH TEN: (42 U.S.C. § 1320a-7b(b)(2)(A)—Payment of Remuneration for Referral of a Medicare Patient; 18 U.S.C. § 2—Aiding and Abetting)

27. The allegations contained in paragraphs 1 through 21, and 24 through 26 are re-alleged and incorporated as if fully set forth here.

28. On or about the dates set forth below, in Santa Clara County, within the Northern District of California, and elsewhere, the defendants,

**JAIME CORTES,
ABDELSALAM MOGASBE, and
JAMES NICKOLOPOULOS,**

and others known and unknown to the Grand Jury, knowingly and willfully paid remuneration, namely, cash in the amounts identified below, drawn on ROQUE's accounts at JP Morgan Chase ending xx8572 and xx8263, for the purpose of paying kickbacks to defendants CORTES, MOGASBE, NICKOLOPOULOS, other referring physicians, and individuals associated with medical providers, for referring Medicare beneficiaries to Medics Choice for home health care services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DEFENDANT | DATE | AMOUNT | ACCOUNT DRAWN ON |
|---|---|---|---|---|
| TWO | NICKOLOPOULOS | 5/8/2015 | $4,500 | JPMC xx8572 |
| THREE | NICKOLOPOULOS | 5/15/2015 | $2,700 | JPMC xx8572 |
| FOUR | NICKOLOPOULOS | 6/26/2015 | $2,700 | JPMC xx8572 |
| FIVE | MOGASBE | 9/3/2015 | $2,000 | JMPC xx8263 |
| SIX | CORTES | 8/27/2015 | $700 | JPMC xx8572 |
| SEVEN | MOGASBE | 10/1/2015 | $2,500 | JMPC xx8263 |
| EIGHT | MOGASBE | 10/30/2015 | $2,500 | JMPC xx8263 |
| NINE | CORTES | 11/6/2015 | $2,800 | JMPC xx8263 |
| TEN | CORTES | 1/21/2016 | $5,500 | JMPC xx8263 |

Each in violation of 42 U.S.C. § 1320a-7b(b)(2)(A); 18 U.S.C. § 2; and *Pinkerton v. United States*, 328 U.S. 640 (1946) (coconspirator liability).

<u>COUNTS ELEVEN THROUGH NINETEEN</u>: (42 U.S.C. § 1320a-7b(b)(1)(A)—Solicitation and Receipt of Remuneration for Referral of a Medicare Patient; 18 U.S.C. § 2—Aiding and Abetting)

29. The allegations contained in paragraphs 1 through 21, and 24 through 26 are re-alleged and incorporated as if fully set forth here.

30. On or about the dates set forth below, in Santa Clara County, within the Northern District of California, and elsewhere, the defendants

JAIME CORTES,<br>
ABDELSALAM MOGASBE, and<br>
JAMES NICKOLOPOULOS,

and others known and unknown to the Grand Jury, knowingly and willfully solicited and received remuneration, namely, cash in the amounts identified below, drawn on or paid in check from ROQUE's JP Morgan Chase accounts xx8572, xx8263, as identified below, in return for, and to induce, the referral of Medicare beneficiaries to Medics Choice for home health care services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DEFENDANT | DATE | AMOUNT | ACCOUNT DRAWN ON |
|---|---|---|---|---|
| ELEVEN | NICKOLOPOULOS | 5/8/2015 | $4,500 | JPMC xx8572 |
| TWELVE | NICKOLOPOULOS | 5/15/2015 | $2,700 | JPMC xx8572 |
| THIRTEEN | NICKOLOPOULOS | 6/26/2015 | $2,700 | JPMC xx8572 |
| FOURTEEN | MOGASBE | 9/3/2015 | $2,000 | JMPC xx8263 |
| FIFTEEN | MOGASBE | 10/1/2015 | $2,500 | JMPC xx8263 |
| SIXTEEN | MOGASBE | 10/30/2015 | $2,500 | JMPC xx8263 |
| SEVENTEEN | CORTES | 8/27/2015 | $700 | JPMC xx8572 |
| EIGHTEEN | CORTES | 11/6/2015 | $2,800 | JMPC xx8263 |
| NINETEEN | CORTES | 1/21/2016 | $5,500 | JMPC xx8263 |

Each in violation of 42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2; and *Pinkerton v. United States*, 328 U.S. 640 (1946) (coconspirator liability).

1 | FORFEITURE ALLEGATION:     (18 U.S.C. §§ 981(a)(1)(C), 982(a)(7) and (b)(1), 28 U.S.C. § 2461(c) – Criminal Forfeiture)

2

3 | 31. The allegations contained in paragraphs 1 through 30 of this Indictment are re-alleged and fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(7) and (b)(1) and Title 28, United States Code, Section 2461(c).

32. Upon a conviction for any of the offenses alleged in Counts One through Nineteen of this Indictment, the defendants,

JAIME CORTES,
ABDELSALAM MOGASBE, and
JAMES NICKOLOPOULOS,

shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7) and (b)(1) and 28 U.S.C. § 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, including but not limited to a forfeiture money judgment in an amount equal to the total proceeds obtained by the defendant from the commission of the offense.

33. If any of the aforementioned property, as a result of any act or omission of the defendant–
   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property that cannot be divided without difficulty;
any and all interest the defendant has in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p).

All in violation of Title 18, United States Code, Sections and 982(a)(7) and (b)(1); Title 28,

\\
\\
\\
\\

FIRST SUPERSEDING INDICTMENT            14

United States Code, Section 2461(c); and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED:                                                          A TRUE BILL.

                                                                _____
                                                                FOREPERSON

STEPHANIE M. HINDS
United States Attorney

s/ Michael G. Pitman
MICHAEL G. PITMAN
Assistant United States Attorney